613 A.2d 494

MANNIE'S CIGARETTE SERVICE, INC., AND C.I.C. CORPORATION, PLAINTIFFS–RESPONDENTS, v. TOWN OF WEST NEW YORK, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 21, 1992—Decided October 1, 1992.

*Gerald S. Meisel* argued the cause for appellant.

No brief was submitted by respondents.

Before Judges PETRELLA, ARNOLD M. STEIN and KESTIN.

The opinion of the court was delivered by

KESTIN, J.A.D.

In 1965, an ordinance was enacted in the Town of West New York regulating and licensing coin operated amusement or game devices. On June 20, 1990 the ordinance was amended to 1) increase the annual license fee from $75 to $500 per device*, 2) change the limit on the number of devices per location from three to two, and 3) eliminate a "grandfather's clause", *i.e.*, the prospective application of a 2,500 sq. ft. per device requirement.

Plaintiffs, who distribute covered devices, challenged the validity of the ordinance as amended on various grounds. On cross-motions for summary judgment, the trial court held the ordinance to be preempted by operation of state law as an impermissible regulation of gambling. The trial court was apparently led to adopt this focus because of the municipality's insistence that its sole purpose for legislating in the area was to prevent criminal activity, *i.e.*, the use of video games in the gambling operations of organized crime.

We reverse the trial judge's determination on the preemption ground and remand for full consideration of remaining issues. Some issues mentioned by the judge in his letter opinion of March 20, 1991, such as those relating to undue burden and valid exercises of police powers, cannot be fully adjudicated in the absence of constitutional considerations, which the trial judge expressly put aside. Other arguments advanced by plaintiffs have not yet been addressed by the trial court.

A municipality possesses only those powers which are delegated to it by the State. *In re Public Service Elec. and Gas Co.*, 35 *N.J.* 358, 370, 173 *A.*2d 233 (1961). It is also

---

* This fee has since been reduced to $150 per device.

fundamental that a municipality may not exercise governmental power in those areas of regulation preempted by the State, *Overlook Terrace Mgt. Corp. v. Rent Control Bd.*, 71 *N.J.* 451, 366 *A.*2d 321 (1976), particularly in the criminal law area, *State v. Crawley*, 90 *N.J.* 241, 247–51, 447 *A.*2d 565 (1982); *N.J.S.A.* 2C:1–5d.

The general grant of police powers to municipalities contained in *N.J.S.A.* 40:48–2 is, however, to be broadly and liberally construed, *N.J. Const.* Art. IV, § VII, ¶ 11; *Fred v. Mayor and Council, Old Tappan Borough*, 10 *N.J.* 515, 517–18, 92 *A.*2d 473 (1952); but always with regard for the limits of legislative prescription. *Id.* at 521, 92 *A.*2d 473. Municipal exercises of governmental power must relate

> to matters of local concern which may be determined to be necessary and proper for the good and welfare of local inhabitants, and not to those matters involving state policy or in the realm of affairs of general public interest and applicability.
>
> [*Wagner v. Mayor and Municipal Council*, 24 *N.J.* 467, 478, 132 *A.*2d 794 (1957).]

Further by way of basic premise, the Legislature has granted municipalities specific, plenary power to regulate places of public amusement, *N.J.S.A.* 40:52–1f, and the machinery and equipment used therein, *N.J.S.A.* 40:48–1(20). *See also N.J.S.A.* 5:8–101 which establishes the power of some municipalities to license owners and operators of certain amusement games under the aegis of the Amusement Games Control Commissioner. These powers, although plenary in stated scope, may of course be limited by an expressed or construed legislative intent to preclude their exercise when they touch upon other, preempted, subject matters and conflict with state policy. *See State v. Crawley, supra.*

Several other fundamental principles govern resolution of the question whether West New York was preempted from legislating with respect to coin operated amusement or game devices because of its stated objective to prevent criminal activity. A municipality's legislative exercise is not to be set

aside if any basis may reasonably be conceived to justify the ordinance. *Quick Chek Food Stores v. Springfield Twp.*, 83 *N.J.* 438, 447, 416 *A.*2d 840 (1980). *See also United States Railroad Retirement Bd. v. Fritz*, 449 *U.S.* 166, 174–75, 101 *S.Ct.* 453, 459, 66 *L.Ed.*2d 368, 376 (1980), *reh'g denied*, 450 *U.S.* 960, 101 *S.Ct.* 1421, 67 *L.Ed.*2d 385 (1981). Municipal ordinances are accorded a presumption of validity and a finding of preemption must clearly appear. *Dome Realty, Inc. v. City of Paterson*, 83 *N.J.* 212, 232–34, 416 *A.*2d 334 (1980); *Orange Taxpayers Council, Inc. v. City of Orange*, 169 *N.J.Super.* 288, 301, 404 *A.*2d 1186 (App.Div.1979), *aff'd*, 83 *N.J.* 246, 416 *A.*2d 353 (1980). The mere fact of subject matter convergence is not, by itself, determinative of the preemption question. *State v. Crawley, supra*, 90 *N.J.* at 249, 447 *A.*2d 565; *see also Township of Chester v. Panicucci*, 62 *N.J.* 94, 103–04, 299 *A.*2d 385 (1973). In evaluating a state preemption argument in the absence of an expressed preclusion of municipal authority, a court must carefully examine in detail the actual ways in which state and municipal ordinances conflict. The question is, in every practical sense, as much one of fact as one of law.

As a general proposition an intent to preempt the power of municipalities will not be lightly inferred ..., but in the final analysis the answer must depend upon the particular setting, the values involved, and the impact of local legislation upon those values.

[*State v. Ulesky*, 54 *N.J.* 26, 29, 252 *A.*2d 720 (1969).]

Even if the validity of an ordinance could properly be determined based upon the only articulated objective, a course that is questionable in light of the traditional perception that a legislative body need not articulate its reasons for enacting a statute, *see e.g., United States Railroad Retirement Bd. v. Fritz, supra*, 449 *U.S.* at 179, 101 *S.Ct.* at 461, 66 *L.Ed.*2d at 378, it is far from clear that an ordinance imposing a license fee and regulating the number of amusement devices and the square footage governing their placement runs afoul of state criminal law policy. The statutes which address gambling as criminal activity prohibit, *inter alia*, possession of gambling devices. *N.J.S.A.* 2C:37–7. By the tests catalogued in *Over-*

*look Terrace Mgt. Corp. v. Rent Control Bd., supra,* it is difficult to see how regulation of the placement of devices that might be associated with gambling conflicts with the State's legislative policy of forbidding traffic in devices that are used for gambling. Manifestly, a municipal licensing scheme, by tracking the number and location of licensed devices, can only facilitate rather than conflict with the State's effort to prohibit their use for gambling.

Furthermore, in the light of the statutes that grant municipalities plenary authority to regulate amusement devices, *N.J.S.A.* 40:52–1f, 40:48–1(20), and 5:8–101, it cannot be said that the Legislature has intended to occupy the entire field of control exclusively, that there is a clear need for uniformity, that the state scheme is so pervasive or comprehensive as to preclude coexistence of municipal regulation, or that the ordinance in any significant way hinders the accomplishment and execution of the full purposes and objectives of the Legislature. *Overlook Terrace Mgt. Corp. v. Rent Control Bd., supra,* 71 *N.J.* at 461–62, 366 *A.*2d 321; *see also Summer v. Teaneck Twp.,* 53 *N.J.* 548, 251 *A.*2d 761 (1969). These latter determinations are necessarily very different in cases involving state preemption questions from those in federal preemption situations because no considerations of federalism inform the inquiry on state preemption issues.

The reasoning of *State v. Crawley, supra,* unquestionably limits the reach of a former rule of law that both the State and local governments may validly act to proscribe the same gambling activities. *See Hunter v. Teaneck Twp.,* 128 *N.J.L.* 164, 24 *A.*2d 553 (*Sup.Ct.* 1942) which, in the face of a predecessor provision to *N.J.S.A.* 2C:37–7 prohibiting the possession of gambling devices, upheld an ordinance prohibiting pinball machines as games of chance or gambling devices. *See also State v. DeLouisa,* 89 *N.J.Super.* 596, 215 *A.*2d 794 (Co.Ct.1965) in which an ordinance prohibiting gambling of any kind was upheld notwithstanding the existence of a statute addressing the same activity.

Nevertheless, in this case the municipality has acted pursuant to an express and plenary grant of power by the Legislature. *N.J.S.A.* 40:48–1(20) and 40:52–1f. We are not here construing "the Legislature's will without reference to a specific statutory text" as was required in *State v. Crawley, supra,* 90 *N.J.* at 245, 447 *A.*2d 565. The intention of the Legislature not to occupy the field of amusement or game device control has been clearly expressed in these provisions and has been negated in no other. This being so, in the absence of a clear showing of a real, functional conflict between the operation of the municipal ordinance and state law, there is no basis for holding that the Town of West New York is precluded from legislating in the field of amusement or game device control.

Reversed and remanded.